IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRANK BETZ ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-0911 |
| | ) | Judge Nixon |
| SIGNATURE HOMES, INC., BRIAN BURNS, | ) | Magistrate Judge Bryant |
| and SIGNATURE PARTNERSHIP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SIGNATURE HOMES, INC., BRIAN BURNS, | ) | |
| and SIGNATURE PARTNERSHIP, LLC, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER L. TURNER, TURNER | ) | |
| DESIGNS, and TURNER DESIGNS, INC., | ) | |
| | ) | |
| Third Party Defendants. | ) | |

### MEMORANDUM AND ORDER

This is a copyright infringement case brought against Defendants Signature Homes, Inc., Brian Burns, and Signature Partnership, LLC's ("Signature Defendants") by Plaintiff Frank Betz Associates, Inc. ("Betz"). Signature Defendants have also filed a Third Party Complaint against Third Party Defendants Christopher L. Turner, Turner Designs, and Turner Designs, Inc.'s (collectively referred to as "Turner Defendants"). After granting in part and denying in part the Parties' summary judgment motions (Doc. No. 176), the Court granted Signature Defendants' Motion to Separate Trial (Doc. No. 180). A bench trial on the issue of the functionality was held in

this Court on August 11-12, 2009. Each party submitted their proposed findings of fact and conclusions of law on October 28, 2009. Also pending is Signature Defendants' Motion for Extension of Time to file its proposed findings of fact and conclusions of law ("Defendant's Motion") (Doc. No. 225). Defendant's Motion is hereby **GRANTED**.

For the following reasons, **the Court finds that Plaintiff has met its burden of persuasion** and therefore **ENTERS JUDGMENT** in favor of Plaintiff on the question of functionality.

## I. PROCEDURAL AND FACTUAL BACKGROUND

At issue in this case are eleven stock single-family home plan designs distributed and marketed by Betz ("the Betz Designs"). Betz asserts thirteen counts of copyright infringement against Signature Defendants pursuant to 17 U.S.C. §§ 101, *et seq.* Specifically, Betz alleges that Signature published, distributed, marketed, and advertised thirteen home plans based upon the Betz Designs and marketed, advertised, and sold houses built from the Betz Designs. Betz is seeking permanent injunctive relief, destruction of the infringing copies, and damages (Doc. No. 56).

Previous to this lawsuit, Betz filed a Complaint against Turner Designs and Chris Turner ("Turner") alleging copyright infringement on certain home plan designs. On May 2, 2006, Turner and Betz entered into a Mutual Release and Settlement Agreement and the case was dismissed with prejudice on June 9, 2006.

Signature Defendants construct and sell homes based upon residential home designs. In response to the Betz Complaint, on August 16, 2007, Signature Defendants filed a Third Party Complaint against the Turner Defendants (Doc. No. 51). The Third Party Complaint alleges three causes of action: (1) fraud; (2) misrepresentation; and (3) violation of the Tennessee Consumer

Protection Act of 1977, relating to eleven of the thirteen architectural designs ("the Turner Designs") that Signature Defendants bought from Turner. Signature sought indemnification for any damage award, plus costs and attorneys fees in the Betz action. Certain of these claims have been resolved on summary judgment. (See Doc. No. 176).

After this Court's Order on the Parties' summary judgment motions (Doc. No. 176), several questions of law remained. Per this Court's August 7, 2009 Clarification Order (Doc. No. 213), the bench trial proceeded on the narrow question of the protectible, non-functional elements of Plaintiff's designs.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Copyright in Architectural Works

The Copyright Act protects original works of authorship fixed in a tangible medium of expression, including architectural works. 17 U.S.C. § 102(a) (1990). Before the 1990 Amendment to the Copyright Act, architectural plans received very minimal protection as "pictorial, graphic, and sculptural works" subject to the "useful article doctrine," 1-2 Nimmer on Copyright § 2.08, and architectural buildings that served a utilitarian purpose, such as houses, received no protection. Id. at § 2.20. The 1990 Amendment to the Copyright Act, also called the Architectural Works Copyright Protection Act, added a new category of protectible "architectural works" defined as:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

Id. (citing 17 U.S.C. § 101). While standard features are not protected, "the creator's independent selection and arrangement of component parts into an overall, original design" may be protected. 1-2 Nimmer § 2.20 (internal citation omitted). The expressions "overall form" and "standard

features" are designed to give the court guidance "regarding the nature of the protected matter" in what must be an ad hoc extent of protection analysis. Id. (citing H.R. Rep. No. 101-735 (1990)). Architectural works created on or after December 1, 1990, qualify for this protection. Id.

The owner of a copyright has the exclusive right to, among other rights not applicable here: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work; and (4) publically display the work. 17 U.S.C. § 106. To bring a claim of infringement of any of these exclusive rights, a plaintiff must demonstrate both "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Plaintiff's claim of ownership of valid copyrights in the eleven Betz Designs was granted in summary judgment.

To prove the second prong of the Feist/Stromback infringement analysis, a plaintiff must first show copying. As is often the case, when there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing: "(1) access to the allegedly-infringing work by the defendant(s) and (2) a substantial similarity between the two works at issue." Kohus v. Mariol, 328 F.3d 848, 854 (6th Cir. 2002). Access is defined as "having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy." Stromback, 384 F.3d at 293. The Sixth Circuit has adopted a two-part test for substantial similarity: (1) "identifying which aspects of the artist's work, if any, are protectible by copyright"; and (2) "determining whether the allegedly infringing work is 'substantially similar' to the protectible elements of the artist's work." Id. at 294.

As to what is protectible under copyright, architectural works, as their own subject matter category under the Copyright Act, are unique. While no longer hindered by the physical or conceptual separability test of pictorial, graphic, and sculptural works, courts must weigh function

-4-

when considering architectural works infringement. See 1-2 Nimmer § 2.20 (the legislative history affords protection for architectural works only when the design elements are not functionally required). The Legislative History of the 1990 Amendment sets forth a two part functionality test in which the Court must: (1) determine whether there are original design elements present, including overall shape and interior architecture; and, if so, (2) examine whether the design elements are functionally required. H.R. Rep. No. 101-735. Non-functionally required elements will be protected without considering physical or conceptual separability. 1-2 Nimmer § 2.20 at n.29. After establishing the protectible elements of an architectural work, if any, the Plaintiff must then prove copying. See Kohus, 328 F.3d at 854.

In determining the protectible aspects of the architectural work, the Court must first identify whether there are original design elements present, including overall shape and interior architecture. 1-2 Nimmer § 2.20 at n.29. While the case law is little help in guiding the Court as to what, if any, constitute original design elements of an architectural plan, see Tiseo Architects, Inc. v. B & B Pools Service & Supply Co., 495 F.3d 344, 347 (6th Cir. 2007); La Resolana Architects, PA, v. Reno, Inc., 555 F.3d 1171, 1179 (10th Cir. 2009); Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1225-27 (11th Cir. 2008); T-Peg, Inc., et al. v. Vermont Timber Works, Inc., et al., 459 F.3d 97, 113-14 (1st Cir. 2006), the Legislative History of the 1990 Amendment indicates that standard features not contemplated for protection under the definition of architectural works include "common windows, doors, or other staple building components." H.R. Rep. No. 101-735. "[T]he arrangement and composition of spaces and elements in the design," including interior architecture, however, may qualify as an original design element. Id. This Court found, in its Order on the Parties' summary judgment motions, that the eleven Betz designs display original design elements

Case 3:06-cv-00911   Document 228   Filed 03/29/10   Page 5 of 8 PageID #: 3824

in the way that their standard features are arranged.[1] (See Doc. No. 176, at 23).

The second prong of the protectibility test for architectural works is an examination of whether the design elements are functionally required. See 1-2 Nimmer § 2.20 at n.29. While both the originality and the non-functionality of a copyrighted work are presumptively established by the copyright registration, Lexmark Intern., Inc. v. Static Control Components, Inc., 387 F.3d 552, 534 (6th Cir. 2004), Plaintiff has put forth evidence to convince the Court, and Defendants have not tendered sufficient rebuttal evidence to refute, that the overall design and arrangement of the eleven Betz Designs are not functionally required, although they contain functional elements, and are therefore protectible under copyright.

The Legislative History indicates that the Architectural Works Copyright Act specifically contemplated protection for buildings that perform a function—for example, habitable or useful structures such as houses, office buildings, and churches—while instructing courts to examine whether original design elements of those buildings are functionally required or functionally determined. H.R. Rep. No. 101-735. Non-functionally required elements will be protected without considering physical or conceptual separability. See 1-2 Nimmer § 2.20 at n.29.

Plaintiff has shown that although the component parts of a house, as captured in a house plan, perform certain functions, the overall design and arrangement of those component parts is not functionally required. Defendant's expert witness James Edwards conceded that the only things required for a house to function as a house are four walls, a roof, and an entrance/exit. (Tr. 235-36). Edwards further explained that a designer's choices as to the internal arrangement of a house plan

---

[1] Defendants argue that merger and scenes a faire preclude protection for aspects of the Betz Designs dictated by external constraints. Because these doctrines concern the originality of the copyrightable work, see 387 F.3d at 535-37, and the Court found that the designs display original design elements in the way that their standard features are arranged (Doc. No. 176), it will not consider these arguments here.

Case 3:06-cv-00911    Document 228    Filed 03/29/10    Page 6 of 8 PageID #: 3825

are not functionally required. (Tr. 241, 252-53). Plaintiff's expert witness agreed that although elements of the Betz designs were functional, each design's particular arrangement was not functionally required. (Tr. 130, 173-74). Just as someone using a kaleidoscope mixes standard colors into a new pattern, there are certain common features that go into a house design—a kitchen, bathroom, bedrooms—and the designer moves each of those elements into an original, potentially protectible arrangement.

While both experts agree that some outside constraints, including market demands, dictate aspects of home plan designs (Tr. 95-96, 134, 136-37, 142-43, 154-56, 236-37), the Court does not find that these external considerations undermine protection for the plans as a whole. There is no standard for house plans. (Tr. 247). Building codes constrain the ultimate design of a house, and while zoning or historic preservation ordinances may affect the exterior design, they do not dictate the interior arrangement of rooms. (Tr. 177-78). Plaintiff's witness Eric Taylor explained that when designing plans, Betz considers the changing taste of the middle class and strives for a "sweet spot where the majority of buyers are" in terms of house square footage and expectations concerning number of bedrooms and amenities. (Tr. 134, 136-37, 142-143). The number of bedrooms for any design may be limited, to some extent, by square footage and, likewise, the width and depth of the lot may influence a design. (Tr. 136-37, 154-56). However, courts routinely protect modern architectural structures and plans, including commercial homes, possessing the minimal amount of originality required by copyright. See, e.g., Axelrod v. Cherveny Architects, P.C. v. Winmar Homes, No. 2:05-cv-711-ENV-ETB, 2007 WL 708798, at *9 (E.D.N.Y. March 6, 2007). And the fact that the creator of a house plan factored marketability into the design renders the plan no less worthy of protection than a pop song designed for mass appeal.

Defendants argue that courts should be particularly wary of granting copyright protection to

Case 3:06-cv-00911   Document 228   Filed 03/29/10   Page 7 of 8 PageID #: 3826

non-custom residential housing where creativity is often *de minimus*, there is a vast, existing body of public domain material, and the adverse consequences of overprotection could be serious. See Patry on Copyright, § 3:1:08. Yet, according to the legislative history, "[e]vidence that there is more than one method of obtaining a given functional result may be considered in evaluating . . . the scope of protection." H.R. Rep. No. 101-735. The sheer number of Betz designs as issue and the number of designs cited by the experts in their testimony point to the various ways that even the features shared by these designs—such as number of bedrooms—may be arranged in original ways. These designs display the minimum amount of originality necessary for protection under the Copyright Act. See id. Although comprised of functional elements, the Betz designs do not rise to the level of functionality such that copyright protection cannot be extended to them. As discussed in the legislative history: "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotected elements into an original, protectable whole." Id.; see also Sturdza v. United Arab Emirates, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("protectible expression may arise through the ways in which artists combine even unprotectible elements"). Plaintiff has established that the overall design and arrangement of the Betz Designs are not functionally required, and are therefore protectible under copyright.

III. CONCLUSION

Judgment is ENTERED for Plaintiff Betz on the issue of the functionality of the Betz Plans. It is so ORDERED.

Entered this ___29th___ day of March, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-8-

Case 3:06-cv-00911   Document 228   Filed 03/29/10   Page 8 of 8 PageID #: 3827